UNITED STATES *v.* GAGE BROS. (No. 229).[1]

1. WEIGHTS DETERMINED BY CUSTOMS OFFICIALS—PRESUMPTION.

   In the absence of material evidence to the contrary, the method employed by customs officials to determine the weight of commodities will be presumed to be correct.

2. SAME—SILK-VELVET RIBBONS AND WOVEN-SILK FABRICS.

   The commodities in controversy were silk-velvet ribbons and woven-silk fabrics. The importers having failed to show that the customs officials weighed as a test an insufficient quantity of the goods, or that the percentage actually weighed was not properly stripped, or that the weight of the percentage that had been properly stripped before weighing was incorrectly reported, or that the method employed to select, strip, and weigh the goods was ill adapted to secure a result at least approximately correct, the official weights as reported will be here presumed to be correct, and this importation was properly assessed for duty at $1.50 per pound and 15 per cent ad valorem under paragraph 386, tariff act of 1897.

United States Court of Customs Appeals, April 10, 1911.

APPEAL from a decision of the Board of United States General Appraisers, Abstract 23284 (T. D. 30615).

[Reversed.]

*D. Frank Lloyd,* Assistant Attorney General ( *William K. Payne* on the brief), for the United States.
*Lester C. Childs* for appellees.

Before MONTGOMERY, HUNT, SMITH, BARBER, and DE VRIES, Judges.

SMITH, Judge, delivered the opinion of the court:

Certain silk velvet ribbons and woven silk fabrics were entered at the port of Chicago in the months of January, February, March, and April, 1909. The ribbons were assessed for duty at $1.50 per pound and 15 per cent ad valorem under the provisions of paragraph 386 of

---

[1] Reported in T. D. 31503 (20 Treas. Dec., 731).

the tariff act of July 24, 1897. Some of the woven silk fabrics were assessed for duty at $3.25 per pound and some of them at $4.50 per pound under the provisions of paragraph 387 of the same act.

The importers protested that the weights as found by the appraiser were in excess of the true weights of the merchandise, that the method followed by the appraiser for ascertaining the weights was insufficient for the purpose, and that the weights of the goods as shown on the invoices were correct and should have been accepted by the customs officers as the proper basis for the assessment of duties. The Board of General Appraisers sustained the protest and the Government appealed.

The only issue raised by the appeal is whether the weights ascertained by the customs officer and the methods employed in ascertaining them were correct. The record in the case is very confused, and to derive from it the facts upon which this issue was submitted to the Board of General Appraisers is attended with some difficulty. As far as we can gather, there is no satisfactory evidence which shows that the weight of the silk velvet ribbon as found by the appraiser was incorrect or that his method of ascertaining it was either improper or inept for the purpose. The weights of the ribbon per piece as found by the appraiser on entry No. 3474 were as follows: $6\frac{2}{32}$ ounces for widths of 36 lignes, $7\frac{8}{16}$ ounces for widths of 40 lignes, $7\frac{8}{32}$ ounces for widths of 42 lignes, and $8\frac{1}{4}$ ounces for widths of 48 lignes. As against the correctness of these weights the importers contented themselves with offering in evidence weights found by the appraiser on a previous importation of what was claimed to be similar merchandise. The weights per piece ascertained and reported by the appraiser on this previous importation were as follows: $6\frac{2}{32}$ ounces for widths of 36 lignes, $6\frac{8}{16}$ ounces for widths of 40 lignes, $7\frac{8}{32}$ ounces for widths of 42 lignes, and $8\frac{1}{4}$ ounces for widths of 48 lignes.

A comparison of the weights reported on entry No. 3474 with those reported on the previous importation discloses a difference of 1 ounce as to the widths of 40 lignes and no difference at all as to the other three widths. Even if the weights of the one importation differed completely from those of the other, that fact standing by itself would not show that the customs officers charged with the duty of weighing the ribbons of the present importation either improperly weighed them or incorrectly reported their weights, first, because there is no satisfactory evidence that the goods of both importations were identical in every particular which might have affected their weights; second, because there is no evidence to show that the weights of the previous importation were ascertained by a method more adequate to the purpose than that followed in the present importation or that the appraiser was less accurate, careful, or certain in ascertaining the weights of the present importation than he was in determining those of the previous

one; and third, because a mere variance of weights tends to prove nothing more than that the ribbons of one importation differed in weight from those of the other. There is nothing in the record from which it can be determined definitely what number of pieces of ribbon were weighed. The fact that the appraiser reports that ribbons of a certain width had a certain weight does not prove that only one piece of that width was weighed.

As to the woven silk fabrics, the importers offered the testimony of Thomas H. Trimble, who testified that he caused six pieces of the goods to be weighed by the city sealer, and that one of them, "Tan 2," containing 15⅞ yards, weighed 9.77 ounces, as against 10.14 ounces reported by the appraiser, and that "Mulberry 2," containing 15⅝ yards, weighed 8.68 ounces, as against 10.36 ounces, the weight officially found. "Pink," 15⅝ yards, weighed 8.75 ounces; "Tan 2," 15⅝ yards, weighed 8.70 ounces; "Navy," 15⅝ yards, weighed 9.66 ounces; and "Ognon," 16⅝ yards, weighed 8.89 ounces. What were the weights officially reported for pieces similar, or claimed to be similar, to the last four pieces is not disclosed by the record as we have it. But, assuming that the customs officers weighed these same identical pieces of merchandise—although there is no proof that they did—and assuming that their weights for the six pieces differed from those of the city sealer, the importers have not shown by a *preponderance* of evidence that the weights officially ascertained were incorrect. The witness Trimble testified that the *actual* weight of the goods can not be reached unless entirely stripped; that is to say, unless the strings, coverings, pins, tags, braids, bolts, and other incidents of packing are removed. He further stated that such stripping of the goods did not improve them any, and that he thought that the customs officers had been so informed, The evidence does not show that the goods weighed by the city scaler were stripped, and even if they were, their weight, however exact it might be, would determine nothing more than the *approximate* weight of the rest of the consignment which had not been so stripped and weighed.

The appraiser did not cause the whole importation to be stripped and weighed. To do so would have been to work unnecessary hardship and loss on the importers. He probably stripped and weighed a percentage of the invoice just as probably did the city sealer, and on the basis of the weights so found calculated the weight of the rest of the goods which were similar in kind, quality, color, and width, thus arriving at a fair approximate weight. In our opinion such an approximation is entitled to the same consideration at least as that determined from the weights found by the city sealer. It follows, therefore, that mere difference between weights officially found and those ascertained by the importers or city sealer can not raise a presumption that the customs officers improperly weighed the goods or that the total weights

were less accurate than those found by the importers in substantially the same way. The weight of "Tan 2," 15⅞ yards, found by the city sealer, was 9.77 ounces, or 0.615 of an ounce per yard, while that of "Tan 2," 15⅔ yards, was 8.70 ounces, or 0.57 of an ounce per yard. From this it would seem that there was an actual difference in weight, even in the same goods.

To support their contention that the methods used by customs officials in ascertaining weights and that the weights ascertained were unreliable, the importers introduced in evidence the report of the appraiser on the weights of another importation not in dispute here, but which is claimed to be merchandise similar to the goods under discussion. From that report it appears that 30 pieces of "Dresden 2," 60 pieces of "Sky," 60 pieces of "Pink," 30 pieces of "Dresden 1," and 60 pieces of "Champagne 1," invoiced as weighing *74 pounds 15¼ ounces*, weighed, as found by the appraiser, *72 pounds 10.19 ounces*. As to this importation, Mr. Trimble testified that he personally stripped the same goods by taking the pins and braids out and the tags and ribbons off, and that the goods actually weighed *76 pounds net*. This evidence is confirmatory of what we have already stated. Moreover, from that actual test to find true net weight it would seem that the invoice weights for which the importers contend may not be correct, and that the method of weighing the goods by the customs officers is not unfair to the importers, inasmuch as the weights found by them in that case were less than the weights set out in the invoice and less than the actual weight found by the importers on reweighing.

In the absence of material and competent evidence to the contrary, the method of ascertaining the weights of any importation and the weights officially reported by the customs officers are presumed to be correct. The fact that those weights differ from the invoice weights of the actual importation and from official weights found for anterior importations not involved in the protests, in our opinion, does not of and by itself overcome that presumption. To justify us in setting aside the official weights it was incumbent on the importers to show clearly and affirmatively that the customs officials did not weigh a fair percentage of the goods, or that the percentage weighed was not properly stripped, or that the weight of that percentage, properly stripped before weighing, was not correctly reported, or that the method of selecting, stripping, and weighing the goods was inadequate to secure a result at least approximately correct. This the importers have failed to do, and the decision of the Board of General Appraisers is therefore *reversed*.

MONTGOMERY, Presiding Judge, and HUNT, BARBER, and DE VRIES, Judges, concur.