(C. D. 1324)

ATLAS CONVERTING CO. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided May 2, 1951)

*Irving Brodsky; George Triedman,* associate counsel; for the plaintiff.
*David N. Edelstein,* Assistant Attorney General (*Richard E. FitzGibbon,* special attorney), for the defendant.

Before CLINE, EKWALL, and JOHNSON, Judges

JOHNSON, Judge: The merchandise in this case consists of nylon yarn. It is wound on cones or on spools. These spools and cones are

packed in cardboard cartons. The plaintiff contends that the weight determined by the customs authorities is excessive.

At the trial Herman P. Goldberg and his son, Burton L. Goldberg, officers of the plaintiff corporation, testified on behalf of the importer. John F. Glancy, customs inspector, testified for the Government. The plaintiff's testimony discloses that the nylon yarn is manufactured by the Canadian Industries, Ltd. The cones and spools of nylon yarn are packed into cartons which are secured by large staples. These cartons, according to the testimony, are reused many times and become quite worn. On the outside thereof, the manufacturer attaches a ticket indicating, among other things, the gross, tare, and net quantity of the yarn. The spinner of the yarn sells only to the Koenig Knitting Mills, Gramby Textiles, Comet Textiles, National Hosiery, and Gramby Hosiery, and the plaintiff purchases the yarn from these mills through its agent, Colwool Accessories, Ltd. When the cartons of nylon yarn are delivered, for instance, to the Koenig Knitting Mills, there is also received from the manufacturer a packing list which notes the number of cartons in which the yarn is packed, the number of spools or cones contained therein, and also the gross weight, the tare, and the net weight of the nylon yarn in each carton. These weights on the packing list correspond to the weights upon the cartons. Payment by the importer is based upon the net quantity of nylon yarn shown upon these packing lists.

The original packages, delivered by the Canadian Industries, Ltd., to the Koenig Knitting Mills, are placed inside other apparently new cartons. These new cartons are secured on the outside with metal strappings. No notations appear upon the outside thereof except the name and address of the importer. The Koenig Knitting Mills neither opens the original cartons nor weighs the contents. After being placed in the new cartons, shipment is made to the importer via air express. The cartons containing the nylon yarn are sold in the condition imported to clients of the importer, without being opened, on the basis of the net weight shown by the packing lists.

Certain exhibits were admitted in evidence illustrating the packing material. Exhibit 1 consists of a cylindrical spool upon which nylon yarn is wound. Exhibit 2 is a cardboard cone upon which nylon yarn is wound. Exhibit 3 is a spool containing nylon yarn. Exhibit 4 illustrates the kind of paper carton in which the cartons of nylon yarn were placed for shipment to the plaintiff, and exhibit 5 for identification consists of metal strappings and clips surrounding the carton. There were also half-sized cartons, and the kind of carton in which the half-sized cartons of nylon yarn were placed for shipment was illustrated by exhibit 6. The strappings and clips for such carton were admitted in evidence as exhibit 7 for identification. Defendant's exhibits 1–A and 2–A consist of an empty spool and an empty cone which the customs authorities had acquired from the plaintiff.

It was further disclosed by the plaintiff at the trial that there had not been any indication at the time of examination that the net weight of the shipments, as shown by the invoices, was questioned by the customs officials. At the time when the customs officials called upon the plaintiff and requested empty spools and cones, it was not disclosed that these empty containers were desired for the purpose of obtaining an estimate of the net weight of the nylon yarn. Not until the time of liquidation of the entries, which was long after the merchandise had been sold by the plaintiff upon the basis of the net weight shown by the packing lists, was the plaintiff apprised of the fact that the weighers' returns had shown less tare than noted upon the invoices, which resulted in an increase in the net weight of the yarn.

The customs inspector testifying herein personally obtained the test weights for some of the shipments in question in this case. In each carton there are 100 spools of nylon yarn, and each carton of nylon yarn wound on cones contains 60 cones. The spools are packed in four tiers of 25 spools to a tier "sort of egg-box fashion." Between the layers of spools was a piece of cardboard. Each column of four was wrapped in heavy paper.

In weighing, certain test packages were selected, one containing cones and one spools. Both cartons were emptied. The inner carton was taken out of the outside carton and emptied of the spools and separators. The cartons, metal straps, and separators were put on a scale along with the paper wrappings and the actual weight thereof obtained. The spool, emptied of its contents, which had been obtained from the importer, marked in evidence as exhibit 1–A, was weighed. The weight was found to be 4¾ ounces. The weight of 100 spools would thus amount to 29.68 pounds. The weigher allowed 30 pounds for the 100 spools contained in a carton, plus 15 pounds actual tare, so that the tare of a carton of spools was 45 pounds. This amount was subtracted from the gross weight in each instance to obtain the net weight. The cones were wrapped individually in wax paper. Exhibit 2–A, obtained from the importer, was used as the test weight of the empty cone, which weighed 1¼ ounces, equaling 75 ounces for the 60 cones in a carton. The carton with paper wrappers, separators, and wire bands weighed 17 pounds. With 5 pounds allowed for the empty cones, the allowance per carton was 22 pounds actual tare. From every carton of cones, 22 pounds were subtracted to arrive at the net weight.

The empty spool and the empty cone, brought into court by the plaintiff's witnesses and admitted in evidence as exhibits 1 and 2, respectively, were each weighed on tested scales in the courtroom by the Government weigher. Exhibit 1 weighed 5.2 ounces and exhibit 2 weighed exactly 1 ounce. The spool and cone, used by the Govern-

ment weigher in obtaining the official tare, were also weighed in the courtroom by the Government weigher. Exhibit 1–A, the spool, weighed 4.8 ounces, which is 0.05 ounce more than the weight used in estimating the tare of the spools. The cone, exhibit 2–A, weighed 1.2 ounces being 0.05 of an ounce less than officially allowed by the weigher in estimating the tare. All of the witnesses expressed their amazement that the weights of the spools and cones were not uniform.

It was further disclosed at the trial by plaintiff's witnesses that although the cones and spools were desired by the customs authorities on account of a question of the weight of the merchandise, the reason for the request for such containers of the nylon yarn was not disclosed, nor were the plaintiff's witnesses requested to cooperate in ascertaining the net weight of the goods, notwithstanding the fact that they had available facilities for winding and unwinding the yarn from spools and cones.

The importer contends that the proper weight upon which duty is assessable is the invoice weight of the yarn involved; and that the weight of the tare, as shown by the invoice, should be allowed. It is further contended that no opportunity was afforded the importer to aid the Government in determining the weight of the nylon yarn, and that the conjectural opinions of customs weighers should not be held binding either upon the rights or the interests of the plaintiff, or upon the reasonable conduct of the weigher as to the regulations.

The Government contends that although, as established by the tests taken in the courtroom of the weight of the cones and spools, the weights varied, they were, nevertheless, "reasonably uniform," and therefore are acceptable under the regulations as the weight of the same. It is further urged that an importer, in attacking the action of the collector, must not only prove by a fair preponderance of evidence that the action of the collector was erroneous, but also that the contention of the plaintiff was correct. It is urged that in the instant case the plaintiff had not sustained either of these burdens, inasmuch as no one connected with the plaintiff corporation either weighed the merchandise after importation or calculated the net or gross weights, or the tare. The Government further contends that invoice statements are not proof of the weights of imported merchandise; and that invoices are self-serving declarations without any other proof to substantiate them.

Section 507 of the Tariff Act of 1930, as far as applicable hereto, provides as follows:

SEC. 507. TARE AND DRAFT.

The Secretary of the Treasury is hereby authorized to prescribe and issue regulations for the ascertainment of tare upon imported merchandise, including the establishment of reasonable and just schedule tares therefor, * * *.

The Custom Regulations of 1943 make the following provisions:

**16.6 Tare.**—(*a*) The net weight of merchandise dutiable by net weight, or upon a value dependent on net weight, shall be determined insofar as possible by deducting the actual or schedule tare from the gross weight. Actual tare may be determined on the basis of tests when the tares of the packages in a shipment are reasonably uniform.

(*b*) When the actual tare cannot reasonably be determined and no schedule tare is applicable, the invoice tare may be used in ascertaining the net weight of the merchandise.

The law authorizes the Secretary of the Treasury to establish regulations governing the determination of tare. The regulations allow the net weight of merchandise to be determined by deducting the actual tare from the gross weight. When the actual tare cannot reasonably be determined, the use of the invoice tare is permitted in ascertaining the net weight. However, actual tare may be determined on the basis of tests when the tare of the packages in a shipment is reasonably uniform.

The evidence is conclusive that neither the customs weigher nor the importer was aware of the fact that the cones and spools were not uniform in weight. That fact was not discovered until the samples in evidence at the trial, which illustrated the kind of spools and cones used to contain the nylon yarn in question, were weighed in the courtroom. The Government official who weighed part of the merchandise in question, at the trial, again weighed the cones from which he had determined the tare, and also the cones submitted by the plaintiff in illustration of the containers of the nylon yarn. The weights thereof varied up to a quarter of an ounce. A variance of such a weight per spool would, in a shipment of 1,700 spools, make a difference of about 26½ pounds. Such a difference certainly is not what would be regarded as "reasonably uniform" weights, as contended by the Government. However, at the time of the weighing, neither the importer nor the Government was aware that the cones and spools were not reasonably uniform in weight. Neither does the evidence submitted by the plaintiff in this action establish the actual weight of the goods at the time of landing, or that the weight of the tare at that time was different from that returned by the Government weighers.

The evidence indicates that the nylon yarn in question constituted initial shipments of such material, at least at the port of Providence. Under such circumstances, it would seem to the court that if the Government officials had acted in a less arbitrary manner and sought the cooperation of the importer in the matter of determining the actual landed weight of the merchandise, excess duties would not have been needlessly taken from the pocket of the importer.

The court is constrained, however, to make a finding in favor of the Government. In the first place, the cones and spools were

established not to be uniform in weight. Secondly, after the weight lists were written, these cartons were placed within other cartons for shipment to the United States. Thus, the gross weight appearing on the packing lists and the gross weight at the time of shipment of the merchandise are not the same. Further, none of the cones or spools before the court were the cones and spools in the shipments in question. They were merely illustrative. The importer had not weighed the shipments after they landed in this country and really had no means of knowing the net weight of the yarn except what appeared on the invoices or the packing lists.

A careful examination of the weights shown upon the packing lists of the various shipments in question discloses that the gross weights determined by the customs inspectors were less than the gross invoice weights in six of the shipments, ranging from 0.3 of a pound to 16.8 pounds, and amounted to more than the invoice weight in one instance by 2.8 pounds, and in another by 3 pounds. The invoice tare, however, was larger than the tare estimated by the customs inspectors from 7.1 pounds to 187.9 pounds. The tare being returned as weighing less than the invoice tare, the net quantity of the goods was thus increased. Although it is quite possible that the variance in the weights of the spools and cones would directly result in an increase in the net quantity of the nylon yarn, there is nothing before the court to establish either the net weight of the yarn or the weight of the tare at the time the merchandise was landed in the United States.

In the case of *General Dyestuff Corporation* v. *United States*, 5 Cust. Ct. 173, C. D. 394, the question of weight involved certain dyestuffs packed in kegs. The kegs were packed in wooden casks with excelsior surrounding the keg to prevent freezing. The importer weighed separately each of the three kegs involved. The outside cases and the excelsior were not weighed by the importer. However, a packing list, entitled "Arrival of Shipment" was admitted in evidence, showing the gross and net weights for the packages. Under the column "gross," two sets of figures appeared, one over the other with a line between. The uppermost figures, when totaled for the six packages, equaled the total gross weight shown upon the invoice. The figures underneath represented the gross weights of the immediate containers and contents, as testified to by importer's witness, and as found upon the first weighing taken by the importer. In each instance, the difference between the two gross weights was 61 pounds, which must have been estimated as the weight of the overpacking. In holding that the evidence was insufficient to establish that the Government weights were wrong and that the importer's weights were correct, the court stated:

We are of the opinion that the evidence fails to establish that the importer ever obtained the gross weight of the merchandise including the so-called overpacking. In establishing that the total gross weights are equal to the invoice weights, reliance is placed solely upon the figures of gross weights entered upon the "Arrival of Shipment" sheet. Just how these gross weights were determined, in view of the fact that the packages as imported were not weighed by the importer, is not shown. It seems apparent from an inspection of the exhibit that the overpacking was merely estimated. Likewise the weight of the kegs as a part of the tare was estimated by assuming that the contents in each keg were uniform and that the difference in weight of the kegs and the invoiced net amount must be the weight of the keg.

In that case, the Government weigher had used the invoice tare in determining the net weight, deducting such tare from the gross weight of the packages determined from separately weighing each of the cases. The court stated that the difficulty with the importer's evidence was that the invoice tare as well as the net weight was claimed to be correct. Yet, there was a complete failure to establish either that the package in the condition as weighed by the Government weigher actually weighed less than found by him, or that the invoice tare was greater than shown upon the invoice.

We are of opinion that the Government weighers in obtaining the gross weights of the nylon yarn in question acted within the scope of their general authority in obtaining such weight, and that the tare was lawfully estimated.

Finding nothing in the evidence submitted tending to controvert the correctness of the return of net weight of the nylon yarn in question, the presumption of correctness of the collector's action has not been overcome, and we are constrained to enter judgment in favor of the Government.