(C. D. 1400)

DRAPER & Co., INC. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided March 25, 1952)

Plaintiff not represented by counsel.
*Charles J. Wagner*, Acting Assistant Attorney General (*Harold L. Grossman*, special attorney), for the defendant.

Before CLINE, EKWALL, and JOHNSON, Judges; CLINE, J., not participating

JOHNSON, Judge: The controversy arising in these cases involves a difference in the weight of 2,297 bales of New Zealand wool, including 89 bales of noils. There are three shipments involved and the difference between the weights returned by the Government weighers and the weights found by the importer's warehouse weighers, who weighed the bales upon arrival at the warehouse, amounted to 11,304 pounds.

The operator of the warehouse, George Mansfield, testified relative to the general practice in weighing and storing wools. According to the witness, the bales were all weighed separately upon Fairbanks scales of 1,500-pound capacity, which were periodically checked as to accuracy, and each year a test was made by the sealer of weights and measures of the state of Massachusetts.

All of the bales of wool and noils in question were weighed at the warehouse by two weighers. These weighers each held a certificate showing that they were sworn weighers. These certificates were obtained merely by appearing before the town manager, accompanied by Mr. Mansfield, and being sworn. Patrick Costello, the first weigher, testified that the bales of New Zealand wools are imported "in twos or dumps tied together by 4 wires." These "dumps" when received at the warehouse are thrown on the floor from the trucks, the wires are broken, and then each individual bale is placed on a hand truck. The hand truck is pushed on the scale. "The lower beam is used for the balance of the hand truck" and the "upper beam for the weights," and a record of the weight thus obtained is made on a receiving invoice. This witness testified that he performed the actual weighing of the bales of wool covered by bond numbers 13486 and 14598.

Three lots of receiving sheets were admitted in evidence as collective exhibits 1, 2, and 3. These consist of long yellow sheets showing the bond number, the reference number for each bale, a column for the invoice weights or weights on the specifications, and a column entitled "reweights." The witness testified that in the reweight column he placed the results of weighing each bale and at the bottom indicated the total weight. These exhibits show that the greatest portion of the reweights upon the sheets is exactly the same as the so-called invoice weights. In some instances, the reweights are lower than the

invoice weights, and others show a greater quantity of wool than contained in the bales as invoiced. All that the witness did was to place the actual receiving weights of the bales upon the sheets and send them to Mr. Mansfield. On cross-examination, he testified that he actually weighed four of the bands with which two bales were strapped together, and he found that each of them weighed 1½ pounds, or 6 pounds per two bales. He also weighed the bagging covering a bale to obtain the tare. However, he did not include these weights upon the receiving sheets which he sent to Mr. Mansfield.

Francis P. Barroni, the other weigher of the wool in question, testified that he also removed the wires from the "dump" of two bales and weighed each bale separately, entering the weight upon the receiving slip. He testified that he first placed a check mark in the check column opposite the number given him and reweighed the bale, placing the result down under the column headed "reweight." He also noted the date, the number of bales and where they were to be stored in the warehouse, the name of the carrier, and his own initials. He did not know when the scales were checked by the sealer of weights and measures.

John Leonard Ellis, the assistant traffic manager of the plaintiff, testified that he handled all the shipments and furnished the customs broker with the documents upon arrival of the shipment. The weight sheets with the invoices were prepared under his direction from the receiving sheets, collective exhibits 1, 2, and 3, and consist of the receiving weights found by the warehouse weighers. The invoice weights appearing upon these exhibits are shown on the weight specifications attached to the invoices as received from the shipper in New Zealand. He testified that the tare used in his computation was the invoice tare and was not the tare taken by the warehouse weighers. The testimony also showed that the wire bands holding the bales together in lots of twos were put on after invoicing and to facilitate handling upon the vessel and were not included in the invoice tare.

The Government called five witnesses to testify, including two customs inspectors who actually weighed the bales of wool in question. Customs Inspector Charles E. Cobb testified that he weighed the wool covered by bonds 16308 and 13486. The weighing of the bales covered by these shipments was accomplished, according to the witness, upon an automatic electric scale, which was tested twice a day for accuracy and more often when there was a change in the weather. Such tests were made by the inspector through weighing a 1,000-pound box. The plaintiff conceded that the witness weighed trucks light and trucks loaded with bales covered by bonds 16308 and 13486. The witness testified that the gross weight of the bales was determined by first weighing the empty truck. Apparently it was a trailer truck,

because he stated the front end, the cab part of the truck, was weighed first, and then the rear portion. When the trucks are weighed light, a ticket with the weight is issued, and that weight is also put "on a sheet." When the truck returns with a load of wool, it is again weighed in the same manner, first the cab part, and then the rear portion containing the wool, and the weights are entered together with the number of bales, the bond number, etc. The witness was of the opinion that the maximum amount that the scale would weigh was about 41,000 pounds.

Customs Inspector Alfred A. Crandall testified that he was a discharging inspector and that he made the notations in dock book 58121, after having obtained the weights from certain weight slips or tags from the figures of Inspector Cobb. Customs Inspector Thomas H. O'Connor testified dock book 52103 contained his name and handwriting. He also obtained the weights therein from tags which came from the truck scales which were Inspector Cobb's records. These dock books were admitted in evidence as exhibits 4 and 5.

Customs Inspector Max Grossberg testified that the figures in dock book 42674 were entered by him and his name was signed on the book, and involved the bales of wool covered by bond 14598. He testified further that he weighed upon a beam scale, by hand, each and every individual bale in dumps of two and in singles, and that his weight results were entered in the dock book, which was admitted in evidence as exhibit 6. Before proceeding to weigh the wool, the witness testified that the long beam of the scale is balanced. When the weighing is finished, the scale is again tested. He did not weigh the burlap bags covering the wool nor the wire holding two bales together, merely weighing the bales in dumps of two as they came to him. He did not, however, indicate the number of the bale in his dock book so that it could be compared with either the invoice or the importer's weights.

Edwin B. Randall, customs clerk, outside division, in charge of the weigher's reports in the port of Boston, testified that when the weight books came to him, they were checked up by the clerks in his office under his supervision. After totaling the figures therein, he arrived at the gross weight to which the tares are applied. The witness testified that the invoice tare is accepted on New Zealand wool, plus an allowance for bands, because when shipped from New Zealand the bales are all singles and not strapped together with these bands. The witness further testified that over a period of years it had been determined that the wire around the average "dump" would weigh about 4 pounds, or 2 pounds per bale. That is to say, in obtaining the net weight, he deducted, in addition to the invoice tare, 2 pounds per bale for the weight of the bands.

The plaintiff makes the following contentions. The weighing of trucks and trailers carrying bales of wool banded together with wire did not furnish as accurate a figure for the weight of the wool as the weighing of individual bales of wool after the wire was removed, as performed by the warehouse weighers of the importer. As no notations were made by the Government weighers identifying the individual bales, it was impossible for the importer to ascertain the weight the Government found for any particular bale. The bales which were weighed by the truckload were upon scales that would weigh only 41,000 pounds while the various loads were substantially in excess of that weight. The burden was upon the Government to prove that a correct result for wool weight was derived by weighing the wool by the truckload. It was established that the weight of the wire bands holding together 2 bales was 6 pounds, or 3 pounds per bale, while the Government accepted an erroneous weight therefor of 4 pounds per two bales, a difference of 1 pound a bale, or for the 2,297 bales, a 2,297-pound difference, and that the weights found by the plaintiff should therefore be accepted as more accurate than the weights taken by the Government.

The Government contends that there is no evidence that the wire bands in question were ever weighed and found to weigh 1½ pounds per band or 3 pounds per bale, and Mr. Mansfield's testimony to that effect was hearsay; that the scales were checked only once a year and, therefore, the testimony of the two weighers who weighed the wool at the warehouse is entitled to no probative weight; and that the weighing of bands around one dump is insufficient to establish that all the bands weighed 1½ pounds each.

The question before the court concerns the net weight of the bales of wool and of wool noils. The invoice tare of the burlap was accepted by both the importer and the Government as being correct and was the tare deducted to determine the net weight. However, there is a dispute as to the weight of the wire bands surrounding the "dumps" of two bales. The Government deducted from the gross weight 2 pounds per bale, while the importer deducted 3 pounds per bale. Outside of the difference in weight of the wire bands, which for the 2,297 bales would make a difference of 2,297 pounds, the importer contends that for the 2,297 bales there is a difference in weight of 11,304 pounds, the importer finding the gross weights to be that much less than the Government's gross weights.

It is for the court to determine from the evidence presented whether the mode of weighing the bales adopted by the importer's weighers was more nearly accurate than that used by the Government weighers. In the absence of material evidence to the contrary, the method employed by customs officials to determine the weight of

commodities will be presumed to be correct, and the burden is upon the importer to show by a preponderance of the evidence that the weights officially ascertained were incorrect. See *United States* v. *Gage*, 1 Ct. Cust. Appls. 439, T. D. 31503. There is no burden upon the Government to establish the correctness of the weights reported by the Government weighers either when weighing by the truckload or when weighing two bales at a time upon smaller scales. The burden always rests upon the importer to establish by a preponderance of evidence that the weights as found by the importer were the correct weights and that the Government weights were incorrect. Imported merchandise is dutiable upon the basis of the net landed weights as found by the United States weigher unless it is affirmatively established that the weights so found were not in accordance with law or the method used in weighing was not as accurate as that used by the importer in weighing the merchandise at the time of unlading. See *Max Landau & Co.* v. *United States*, 2 Cust. Ct. 768, Abstract 41673.

In the case of *Caron Spinning Co.* v. *United States*, 22 Cust. Ct. 258, Abstract 52923, there was an importation of 259 bales of wool in the grease imported from Melbourne, Australia. The record established that the customs weigher returned a net weight of 76,691 pounds, 69.9 per centum of which was equal to the clean content weight of 53,607 pounds. The plaintiff claimed that the net weight was 75,572 pounds which would result in a lower dutiable weight than returned by the Government. The importer's weigher testified that he weighed the shipment upon a Fairbanks-Morse springless scale when it arrived at its plant at Rochelle, Ill., from Chicago. The bales were strapped two together. Before weighing each separate bale, he removed the steel band straps holding the two bales together. The gross weights were noted in the handwriting of the witness on the list of weights admitted in evidence, and a calculation upon an adding machine of the various weights listed in exhibit 1 was admitted as exhibit 2, showing a total gross weight of 78,421. The weight of the tare, that is, the burlap coverings and the wire, was not determined by the witness. All he found was the total gross weight.

The Government witness testified that a Fairbanks scale was tested through the use of standard 50-pound weights. The trucks used to carry the bales from the railway cars were weighed. The seals on the railway cars were then broken, and the bales of wool were trucked directly upon the scales. The weight of the truck was deducted from the weight recorded on the scales in each instance and the remainder noted in the official dock book as the gross weight. Each bale was weighed separately and an allowance of 11 pounds per bale

was made for tare of burlap covering. The tare of the wire bands was found to be 2 pounds per bale, which was determined by stripping 10 bales and weighing the bands. From the total thus obtained, he figured the average weight. The total tare for the entire shipment was 3,367 pounds, and the net weight of the wool was recorded in the dock book as 76,691 pounds, the weight reported to the collector.

The court stated in its decision, in rendering judgment in favor of the Government:

* * * When dutiable by weight, the weights to be used by the collector are such as are returned by the Customs weighers. These weights are to be taken as the official landed weights unless it is established that they were not obtained in accordance with the regulations or that the weighers proceeded upon a wrong principle in performing the duty imposed upon them by law. Where irregularities occur in the weighing of goods, which would tend to lead to erroneous results, evidence furnished the court by the importer which satisfactorily shows the weight of the imported goods at the time of landing would be adopted rather than the weights returned by the Customs weigher.

The evidence before the court in this case, however, establishes that the Customs weigher of the goods proceeded to weigh the wool through the usual and customary processes, weighing each and every bale in the shipment. The importer on the other hand failed to produce satisfactory evidence of the net weight of the goods at the time of landing. * * * The preponderance of evidence, therefore, favors the methods of obtaining the weights reported by the Customs weigher and nothing appears of record to establish that such are not the weights to be used as the basis of levying duty.

From the evidence herein submitted by both sides, it is clear that the Government weighers as well as the importer's weighers weighed the entire shipment. Relative to the weight of wool and allowance of invoice tare, there is nothing to show that the Government weighers acted contrary to the Customs Regulations of 1943, section 16.6 providing:

16.6 Tare.—(a) The net weight of merchandise dutiable by net weight, or upon a value dependent on net weight, shall be determined insofar as possible by deducting the actual or schedule tare from the gross weight. Actual tare may be determined on the basis of tests when the tares of the packages in a shipment are reasonably uniform.

(b) When the actual tare cannot reasonably be determined and no schedule tare is applicable, the invoice tare may be used in ascertaining the net weight of the merchandise.

It has been held that weighing a shipment by bulk is inclined to be a more accurate method than weighing each individual unit of a shipment, unless it is established that the scales upon which the weights were taken were inaccurate and not recently tested. In the case at bar, the Government scales upon which the truckloads of wool were weighed were tested twice daily and under certain conditions more often than that. The trucks were weighed in two parts, the cab part first and then the trailer part, so that there was no question

that the weight put upon the scale was excessive or greater than the scale was able to take. As part of this shipment was also individually weighed in drafts of two bales, and the evidence establishes that the scales upon which the bales were weighed were also tested before weighing and after weighing, the Government weighers of the wool in question acted within the law and regulations and took all precautions in returning the weight of the merchandise. On the other hand, the weighers in the warehouse of plaintiff, who weighed the bales in question, had no idea when the scales upon which the bales were weighed were tested for accuracy before the weighing in question took place. It would seem to the court that there would be a greater tendency to err in weighing the bales individually than in weighing them by the truckload. The bales which were weighed in drafts of two upon tested scales by the Government weighers, would appear to result in more accurate weights than the bales weighed by the importer's weighers upon scales which were not tested.

There is a doubt, however, concerning the tare allowance made by the Government for the wire bands used to bind two bales together which was not shown upon the invoices. The Government admittedly did not weigh any of the wire bands upon the bundles to ascertain the average tare, and there was no schedule tare declared on same, but it accepted what had been found over a period of years to be the average weight of the wire upon such "dumps," as the weight of the wire in question, to wit, 2 pounds per bale. The importer's weighers, on the other hand, actually weighed the wire taken from one bale and found that each piece of wire weighed 1½ pounds, or 6 pounds for the 4 wires used upon a "dump," making the weight of the wire per bale to be 3 pounds instead of 2 pounds.

Although the testimony as to the weight of the wires taken from one bale is not strong evidence that the wire upon 2,297 bales also weighed 3 pounds per bale, it is better evidence than the Government submitted in that regard and we believe it is sufficient to overcome the presumption of the correctness of the collector's action in accepting an average weight of wire surrounding similar "dumps" determined upon some other shipments, possibly from another country.

From a careful consideration of the evidence in this case we are of the opinion that it is insufficient to overcome the presumably correct weights returned by the Government weighers. However, as to the weight of the wire bands, we are of the opinion that 3 pounds per bale should have been allowed by the collector rather than 2 pounds. To that extent, judgment will be entered in favor of the plaintiff. The collector is directed to reliquidate the entries refunding duties taken upon the basis of 2,297 pounds of wire included in the net weight.