BEFORE THE THIRD DIVISION, JULY 14, 1955

**No. 59224.**—Morris Friedman *v.* United States, protest 135562–K (Philadelphia).

JOHNSON, Judge: This is a protest against the collector's assessment of duty on two lots of capers in salt, imported from Spain on or about April 22, 1944, at 20 per centum ad valorem under paragraph 1558 of the Tariff Act of 1930, as articles manufactured, in whole or in part, not specially provided for. It is claimed in the original protest that duty was assessed on too great a quantity of merchandise.

It appears from the official papers that the entry was liquidated on November 21, 1944, and the protest filed on December 9, 1944. For unexplained reasons, the protest was not transmitted to this court until January 30, 1948. Thereafter, a hearing was held in New York on November 15, 1948, at which time testimony was taken and the protest amended to include a claim that the invoice net weights were the correct dutiable weights. The case was transferred to Philadelphia and a hearing held there on December 14, 1948. Upon retransfer to New York, a hearing was held on November 21, 1949, at which time a motion was made to amend the protest further to insert a claim that the merchandise was free of duty under paragraph 1722 as a crude vegetable substance. Briefs were filed and the motion was granted by the court on February 21, 1950. On April 17, 1950, the case was suspended under protest No. 149541–K (*S. Montaner* v. *United States*). That protest was pending until April 6, 1955, when it was abandoned by the plaintiff therein, and a judgment dismissing it was rendered on May 16, 1955. The present case has now been submitted, pursuant to stipulation, on the record heretofore made. No briefs have been filed by either party.

At the first hearing of this case, plaintiff called Philip Mumbru, president of General Olive Oil Corp., importer of the within merchandise. He testified that he had examined the merchandise and that quite a few kegs were weighed at the warehouse in his presence. The weight of those kegs was found to be 70 kilos net per keg. According to the witness, capers are weighed in Spain in their natural state; 70 kilos are packed in a wooden barrel; and brine is added to conserve the fruit. The main part of this brine is absorbed by the capers. The witness explained that the invoice gross weight does not include the weight of the brine and that the invoice net weight of 70 kilos a keg does not include either the tare or the weight of the brine. He added that he has been selling this type of merchandise for 40 years and that it is billed at 70 kilos a keg.

At a subsequent hearing, defendant called Thomas E. Theobald, customs inspector, who testified that he had weighed the within merchandise. He explained that, where merchandise is of uniform size, such as the kegs herein, 10 out of 100 are weighed, and the average weight is applied to the other 90 kegs. The witness stated that the two lots in this shipment were segregated and a percentage of each weighed separately. The barrels were placed one at a time on a platform scale after the scale had been tested for accuracy. The gross weight of the lot containing 108 kegs was found to be 22,750 pounds and that of the lot containing 65 kegs 13,650 pounds. The witness did not have a record of the number of kegs weighed but stated that it had been written in a dock book.

Raymond L. Wickel, another inspector of customs, testified that his duty was to separate the dutiable merchandise from the tare and arrive at the net weight. He stated:

We took our equipment down on the dock and selected a barrel. They all seemed uniform and we took the head out of it and we have bulk containers and we put a screen over it with a piece of cheese cloth over it and we take these capers and scoop them out of the barrel and onto this screen and drain them off and separate them and put the capers into another container until the barrel is empty. Then we weigh the barrel with the brine in and allow that for tare and in this case it amounted to 32 pounds.

This procedure, according to the witness, was followed as to one barrel in each lot, and the tare was found to be the same. The net weight arrived at amounted to 19,294 pounds on the 108-keg lot and 11,570 pounds on the 65-keg lot. The capers also were weighed separately and amounted to 188 pounds per keg.

John E. Kilpatrick, deputy collector of customs, testified that the dock book into which the previous witnesses had entered the weights was missing and could not be located.

No evidence was offered as to the claim that the capers are free of duty under paragraph 1722 as crude vegetable substances; therefore, that claim is deemed abandoned.

The only issue remaining is whether the weights ascertained by customs officials and the methods employed in finding them were correct. The burden rests upon the importer to establish by a preponderance of evidence that the weights claimed by him are correct and that the Government weights are not. Merchandise is dutiable upon the basis of the net landed weight as found by the United States weigher, unless it is affirmatively established that the method used by the weigher was not in accordance with law or was less accurate than that used by the importer in weighing the merchandise at the time of unlading. *United States* v. *Gage Bros.*, 1 Ct. Cust. Appls. 439, T. D. 31503; *Draper & Co., Inc.* v. *United States*, 28 Cust. Ct. 136, C. D. 1400.

In the instant case, plaintiff's witness testified that quite a few kegs were weighed at the warehouse and the net weight was found to be 70 kilos per keg. He did not describe the method of weighing or state how and when the scale had been tested for accuracy. On the other hand, Customs Inspector Theobald testified that the gross weight was obtained by weighing 10 out of 100 barrels on a platform scale whose accuracy had been tested. Weights taken upon scales in compliance with official duties are to be accepted in preference to those taken on scales not shown to have been tested and found correct. *United States* v. *Lozano, Son & Co.*, 6 Ct. Cust. Appls. 281, T. D. 35506.

Customs Inspector Wickel described in detail the method of obtaining tare. While only a single barrel out of each lot was used, he stated that the barrels were uniform. Under the regulations, actual tare is permitted to be determined on the basis of tests when the tares are reasonably uniform. Customs Regulations of 1943, section 16.6 (a); *Atlas Converting Co.* v. *United States*, 26 Cust. Ct. 198, C. D. 1324.

The invoice net weights amount to 70 kilos per keg. That is the weight claimed by the importer and which the witness Mumbru stated was found when certain kegs were weighed in his presence. However, he testified also that 70 kilos of capers in their natural state were weighed out and packed in brine in Spain and that the main part of the brine was absorbed by the capers. Consequently, the weight of the capers on arrival here would presumably be greater than their weight on exportation from Spain. That is in accord with the greater weight found by the customs inspectors.

At the opening of the trial, counsel for the plaintiff stated that the collector had ascertained the dutiable net weight by a mathematical computation and that his theory of mathematics was wrong. However, that contention was not pursued further, and we have not been enlightened as to what is claimed to be in error.

On the record presented, we find that plaintiff has not established by a preponderance of evidence that his claimed net weight was more accurate than the weights obtained by customs inspectors, or that the methods used by them were not in accordance with law. The protest is overruled and judgment will be rendered for the defendant.