(C. D. 1863)

SCANDINAVIAN OIL CO. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided March 26, 1957)

*Jordan & Klingaman* (*Jacob L. Klingaman* of counsel) for the plaintiff.
*George Cochran Doub,* Assistant Attorney General (*William J. Vitale,* trial attorney), for the defendant.

Before JOHNSON and DONLON, Judges

JOHNSON, Judge: This is a protest against the collector's assessment of duty and internal revenue tax on seal oil imported from Greenland and entered for warehouse during 1941. Three entries covering various oils are involved, but the claims before us are limited to seal oil. The merchandise was manipulated while in warehouse, and quantities were withdrawn from time to time for consumption. The entries were liquidated in 1953, duty being assessed at the rate of 6 cents a gallon under paragraph 52 of the Tariff Act of 1930 and internal revenue tax at the rate of 3 cents a pound under section 2491 of the Internal Revenue Code. The classification and rates are not in issue, but it is claimed that duty and tax were assessed upon a greater quantity of merchandise than was actually imported and upon a greater quantity than resulted from manipulation in warehouse; that no allowance was made for 12 barrels out of entry No. 5278, shortshipped or not found; and that no allowance was made for 40 drums out of entry No. 2657, destroyed under customs supervision.

At the trial, Alexander Bistritsky, general manager of the plaintiff corporation, testified as follows: The imported merchandise was stored at the bonded warehouse of Harbor Tank Storage Co., Inc., at Guttenberg, N. J., and deliveries were made therefrom upon instructions of the plaintiff company. Plaintiff received statements every month showing the quantities remaining in warehouse and the amount owed for storage charges. The witness had examined these statements and warehouse receipts, delivery slips, and every record kept by the company, relating to these shipments, for the purpose of determining the quantities of merchandise delivered. However, in order to obtain these figures, he had to take into consideration four entries, that is, the three entries involved herein and warehouse entry No. 7259, which covered merchandise that was imported and placed in manipulation warehouse at about the same time. The reason for

this was that the warehouse receipts do not give the bond number (entry number) pertaining to the merchandise delivered.

According to the witness, the total delivered from the merchandise covered by the four entries amounted to 1,570,194 pounds of seal oil. The quantity on which duty and tax were paid on the four entries was 1,606,544 pounds. The witness concluded, therefore, that the Government had received duty and tax on an excess of 35,611 pounds. In this calculation, the weight of the 12 drums, which were not landed, was not included.

On cross-examination, the witness testified:

X Q. In other words, what was delivered from warehouse was less than what was received by the warehouse?—A. That's correct.

\*     \*     \*     \*     \*     \*     \*

X Q. Could you tell me from the calculation that you testified to, that is 1,570,194 pounds, can you tell us how much of that came out of the three bonds that are involved in this case?—A. The total amount of three bonds, the total amount less—there is a difference from the receipted weight and delivered weight of 739 pounds, according to my figures.

X Q. You mean on the three bonds that are involved in this case?—A. On the total four bonds.

X Q. How many pounds was that?—A. A difference of 739 pounds.

X Q. What does that mean?—A. That means I received more than—in addition to what was delivered I received 739 pounds additional. That means the warehouse received.

X Q. That's what I'm trying to get at, you mean the warehouse received 739 pounds more than what you claim was delivered by the warehouse according to your orders?—A. Correct.

X Q. And that's on the three bonds?—A. On four bonds.

The witness stated, further, that the customs figures on liquidation were accepted in the case of the fourth bond.

Leo Edelheit, customs liquidator at the port of New York, testified for the defendant as follows: As to entry No. 2331, it was determined that 690,600 pounds of seal oil were subject to duty and tax, the weight being converted into gallons for duty purposes on the basis of 7.718 pounds to the gallon. This figure was based on the surveyor's return of gross weight, less a reported tare for a net weight of 729,333 pounds, less an allowance of 21,615 pounds for 60 drums which had been exported, and less an allowance of 17,118 pounds for 40 drums that had been destroyed. These figures were obtained from the manipulation form received from the storekeeper of the warehouse.

As to entry No. 5278, duty and tax were assessed on a basis of 463,289 pounds. The surveyor reported a net weight of 514,897 pounds, to which the collector added a weight of 3,847 pounds for 11 barrels, which the inspector had reported as not landed and not found, for a total of 518,744 pounds. An allowance was made for 150 barrels, which had been exported, whose weight was reported as 55,100

pounds, and an allowance was made for 1 drum of solid matter, having a weight of 355 pounds. This left a net dutiable weight of 463,289 pounds.

As to entry No. 2657, duty and tax were assessed on the basis of 297,736 pounds, which were based on the surveyor's net landed weight. No other allowances were made.

The witness stated that the merchandise involved in all of these entries was manipulated in warehouse; that the oils included in these entries were dumped into one or two common tanks; and that there was no way of ascertaining the respective quantities covered by each of the entries after the merchandise had been commingled. At one point, the witness said that some of the oil from entry No. 7259, which was not involved in this case, had also been thrown into the tank. Later, he said that he did not know if the oil from that entry had been commingled. The witness testified, further, that the allowances that were made for manipulation in entry No. 2331 and entry No. 5278 were for 40 drums that contained sediment and for 1 drum of solid matter. He said that no general allowance for losses in manipulation was made, because he had seen no report by the United States warehouse officer providing for any extra allowances and that no allowance was made for the 11 barrels short landed.

Plaintiff has abandoned its claim that no allowance was made for 40 drums destroyed under customs supervision. It is contended, however, that the record shows, by the uncontradicted evidence of the witness Bistritzky, that the amount of seal oil assessed with duty and tax exceeded the amount actually withdrawn from warehouse and that an allowance should have been made pursuant to section 562 of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938. That section, so far as here pertinent, provides:

* * * *Provided*, That upon permission therefor being granted by the Secretary of the Treasury, and under customs supervision, at the expense of the proprietor, merchandise may be cleaned, sorted, repacked, or otherwise changed in condition, but not manufactured, in bonded warehouses established for that purpose and be withdrawn therefrom * * * for consumption, upon payment of the duties accruing thereon, in its condition and quantity, and at its weight, at the time of withdrawal from warehouse, with such additions to or deductions from the final appraised value as may be necessary by reason of change in condition. * * *

In support of its contention, plaintiff has cited *United States* v. *R. C. Williams & Co., Inc.*, 40 C. C. P. A. (Customs) 130, C. A. D. 508, which held that an allowance should have been made in internal revenue tax for one bottle of whisky found missing at the time of withdrawal, although it had been received by the warehouse.

The difficulty with plaintiff's position, in the instant case, is that it has not established the quantity, if any, covered by the three entries before us, which was received by the warehouse but which was not withdrawn therefrom. The most that the testimony of the witness

Bistritzky shows is that the quantity of merchandise withdrawn from warehouse covered by the three entries, plus another entry, was less than that upon which duty and tax were assessed. There is nothing to indicate what portion of the alleged loss is attributable to the present three entries. Furthermore, the witness' testimony is confusing, if not contradictory, since at one time he stated that the loss was 35,611 pounds and at another that it was 739 pounds. None of the warehouse receipts or other papers from which the witness' calculation was made was offered in evidence. While it was stated that the liquidation figures on the fourth entry were accepted, they were not introduced into evidence. Apparently, deduction of those figures would not establish the correct amounts attributable to the other three entries. In any event, plaintiff's witness made no attempt to make such a deduction or to show the figures from which his calculation was made.

Although the liquidator stated that the inspector had reported 11 barrels as not landed and not found, this report was not introduced into evidence, nor was any proof offered to show that plaintiff had not received these barrels.

On the other hand, the customs official who liquidated the entries testified that the dutiable weight of the merchandise was based upon the surveyor's figures, less certain allowances made in accordance with the warehouse officer's report. There was no general allowance for manipulation losses because the warehouse officer did not report that such allowance should be made.

The method of ascertaining weights of any importation and the weights officially reported by customs officials are presumed to be correct, and the burden is upon the importer to show the contrary by a preponderance of evidence. *United States* v. *Gage Bros.*, 1 Ct. Cust. Appls. 439, T. D. 31503; *Draper & Co., Inc.* v. *United States*, 28 Cust. Ct. 136, C. D. 1400. This, the plaintiff herein has failed to do.

The evidence presented is insufficient to overcome the presumption of correctness attaching to the collector's action or to establish any other weights or quantities for the merchandise as withdrawn from warehouse. The protest is overruled and judgment will be rendered for the defendant.