(C. D. 1929)

COLLETT-WEEK-NIBECKER, INC. } v. UNITED STATES
MAHER-APP & COMPANY

United States Customs Court, Third Division

(Decided October 23, 1957)

*Lawrence & Tuttle (Richard F. Weeks, Dan Erik Hedin,* and *Frank L. Lawrence* of counsel) for the plaintiffs.
*George Cochran Doub,* Assistant Attorney General (*William J. Vitale,* trial attorney), for the defendant.

Before JOHNSON and DONLON, Judges

JOHNSON, Judge: The merchandise involved in this case consists of 24 drums of whale liver oil imported from England on or about March 23, 1952, and entered for consumption at the port of New Orleans. The oil was assessed with duty at 5 per centum ad valorem under paragraph 34 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T. D. 51802, and with internal revenue tax at 1½ cents per pound under section 2491 of the Internal Revenue Code. The drums were assessed with duty at 12½ per centum ad valorem under paragraph 328 of said tariff act, as modified by the Annecy Protocol to the General Agreement on Tariffs and Trade, T. D. 52373, and the President's proclamation of March 1, 1950, T. D. 52423.

The protest does not attack the classification or the rates of duty or tax, but claims that duty was assessed upon too great a quantity of merchandise.

At the trial, John Joseph Armisto, production manager of Collett-Week-Nibecker, Inc., testified as follows: The merchandise was shipped from New Orleans by truck and arrived at the firm's plant in Ossining, N. Y., around the 1st of May 1952, at which time it

was first seen by the witness. The 24 drums were composed of heavy gauge steel and were marked with the drum numbers and with the identification mark "Leberol." The witness stated:

* * * these drums were in exceptionally good condition. In fact, they were exceptional drums that we received. I think in all my time that I have worked there I have never received drums like these. They were exceptionally heavy, and really reinforced.

The drums were sealed by means of a wire with a lead seal, which came in contact with the bung, but, at the time of arrival, the seals were missing from three or four of the drums. The witness subsequently examined each and every drum and found that they were all filled to capacity, with space allowance for expansion.

After the drums were unloaded at the plant, they were placed under refrigeration for a week or two, at which time they were taken out, sampled, and weighed. At that time, the drums were in the same condition, showing no damage or leakage. Each drum was weighed full, individually, by a weighmaster from Bacon & Co. The scale used was a Toledo portable kilo scale, which was usually tested every 3 months and was checked by the weighmaster. The witness supervised the weighing and the preparation of a report showing the weights obtained (plaintiffs' exhibit 1). This report contains a number of columns, the last two of which are headed "ACTUAL LBS." and "ACTUAL KILOS." The totals given under the respective columns are "Gross 6353.5 lbs" and "2882.725 kilos=6355.2."

After the contents were removed, the drums were thoroughly washed with a solvent and were weighed empty by employees subordinate to the witness Armisto. The results were placed upon production reports made by these employees in the ordinary course of business. These reports were received in evidence as plaintiffs' collective exhibit 2. The witness stated that they do not show the weights in pounds, but in kilos, and that kilos are converted into pounds by the use of the factor 2.2046. He said that he had made the computation of the total net weight in pounds from the production reports and stated that it was 4,572.96 pounds.

Plaintiffs' collective exhibit 2 shows weights for the drums in lots of two, giving the gross weight, the tare, and the net weight of each lot. The total gross weight for the 24 drums adds up to 2,882.525 kilos, the total tare 818.5 kilos, and the total net 2,064.025 kilos.

The Government presented in evidence customs Form 6001, entitled "UNITED STATES CUSTOMS SERVICE Report of Weight, Gauge or Measure of Imported Merchandise," dated April 10, 1952 (defendant's exhibit A). This indicates that the full drums were weighed individually by customs employees and the total gross weight found to be 6,355 pounds. The report states, as to tare, "Estimated Tare 30

lbs Ea    Impractical to tare actual tare." The total estimated tare is given as 720 pounds, leaving a net of 5,635 pounds.

At issue in this case is the actual landed net weight of the merchandise, since duty must be assessed on such weight, regardless of the weights given on the entry or invoice. *Gertzen & Co. v. United States*, 12 Ct. Cust. Appls. 499, T. D. 40697; *Downing & Co. v. United States*, 11 Ct. Cust. Appls. 310, T. D. 39128. While it is presumed that the weights officially determined by the collector and the methods used by Government weighers are correct, the importer may rebut this presumption by showing the true weight of the merchandise. *United States v. Gage Bros.*, 1 Ct. Cust. Appls. 439, T. D. 31503; *Sears, Roebuck & Co. v. United States*, 3 Ct. Cust. Appls. 447, T. D. 33035.

In the instant case, the gross weight is given on the entry as 6,343 pounds, on the Government weigher's report (defendant's exhibit A) as 6,355 pounds, on plaintiffs' exhibit 1 as 6,353.5 pounds and as 2,882.725 kilos (6,355.2 pounds), and on plaintiffs' collective exhibit 2 as 2,882.525 kilos (6,354.814 pounds). Except for the invoice weight, these weights are substantially in accord, and the gross weight found by the Government weigher, 6,355 pounds, is accepted as correct.

However, the Government weigher did not find the actual weight of the drums, when empty, but estimated the tare as 30 pounds each, or 720 pounds for the lot. On the other hand, the importer did weigh the drums when empty. According to the production report, made by the importer's employees in the regular course of business, the total tare was 818.5 kilos, which, by the use of the factor 2.2046, comes to 1,804.465 pounds. By subtracting this from the gross weight found by the Government weigher, a net weight of 4,550.535 results. That figure is in practical accord with the net weight found by the importer's employees, 2,064.025 kilos (4,550.349 pounds). Although the witness Armisto gave the net weight converted to pounds as 4,572.96 pounds, this appears to be in error and is not supported by the records themselves.

In our view, the evidence establishes that the net weight of this merchandise was 4,550.535 pounds. *Draper & Co., Inc. v. United States*, 28 Cust. Ct. 136, C. D. 1400. In that case, the Government did not weigh any of the wire bands used to bind bales of wool, but estimated tare on the basis of an average weight found over a period of years on other importations. The importer's weighers actually weighed the wire taken from one bale. The court noted that the testimony as to the weight of the wires from one bale was not strong evidence as to 2,297 bales, but held it was better than that submitted by the Government and was sufficient to overcome the presumption of the correctness of the collector's action in accepting an average weight obtained from other shipments. It follows that, in the instant

case, where the importer weighed all the empty drums, evidence of such weights is sufficient to overcome the presumption of correctness attaching to the Government weigher's estimated tare.

For the reasons stated, we hold that the whale liver oil involved herein is properly subject to duty on the basis of a net weight of 4,550.535 pounds. The protest is sustained and judgment will be rendered directing the collector to reliquidate accordingly.